Good morning, Your Honor. It's Peter Popov for the Petitioners. In this case, in your recent decision in the Lien from 2004, this Court has set many requirements for approving ineffective assistance of counsel, and in this case the Petitioner has met all of them. The respondent in his brief, all the arguments he's raised are actually not sustainable. So in half of his brief, he's arguing about whether there is the right of counsel under the Sixth Amendment when the Court has said that ineffective assistance of counsel is due process of violation under the Fifth Amendment. Who's the counsel that was ineffective? That's the counsel who is ineffective is the Usherton. Who? Usherton. And was that counsel given Losada notification of the allegations against counsel? In what respect? How? First, there was an affidavit written by the Petitioner. It's on page 49 on the record. 499 on the record. Then there was a hard complaint against the Petitioner. This is page 156. The Attorney's Office was notified by FedEx, and the notice is on page 148. Okay. These are the Losada notices? Yes, those are Losada notices. Okay. You know, I'm sorry. You're going to have to do this. This is my fault. Could you back up and give me those pages slowly? First the page for the affidavit. Page 419. 419. Page 419 is the affidavit. And where on page 419, and where does it say that, and what does it say? Page 419. Page 28. Page 28. Of the blue brief says, So the only reason Petitioners fell short with Losada requirement is the partial compliance. So your brief seems to tell us that you did not comply with Losada. Yes, the partial compliance means they didn't give time to the Asherton, the attorneys, to respond. That's the partial requirement, because Losada requires to give notice and to give them time to respond. But here is the question, because they filed the next day, two days later, after they notified the opposing counsel, against whom they allege ineffective assistance, they filed the motion to reopen. But the problem is that the judge decided the case three months later. So the counsel against whom the complaint is being filed has plenty of time to respond. Had they responded to the attorney filing the motion to reopen. How did Mr. Asherton get the notice? How did the notice go to Mr. Asherton of ineffective assistance? By FedEx. Okay. FedEx and the receipt from the FedEx is on page 148. Okay. So 114 will show me an Asherton notice. 114. I don't have a 114. A 148. 148. Okay. I can see the 148 FedEx, but what is it that was sent by FedEx? Where can I find that? FedEx will send the entire motion to reopen, including the affidavit. How do we know that? Where does it say that's what was in the FedEx package? It's in the affidavit. It's in the affidavit of the respondent. The brief concedes, the way I read it, Mr. Popov, that I'll read it to you. The fact that former counsel was not provided with the opportunity to respond. That's true. But because they filed a motion to reopen the next day. Well, and that's the whole point of Lozada, is to give counsel an opportunity to respond. And you concede here you didn't give him that because you filed the, you sent the affidavit assuming that's what it contained on the same day. Too late. As a matter of fact, it was another counsel. It was not me. Well, this is your brief where you concede he wasn't given notice to respond. That's true. But as a matter of fact, the judge decided the case three months later. So the counsel has three months to respond. Had he responded, he would have filed a motion to reopen, would have substituted the record and provided his response to the judge. The same counsel could provide this response to the judge directly because he was served with the motion to reopen by itself. Oh, I see. So that's how he got his notice, is he got the, you served him a copy of the notice to reopen. Yes. That's how he got his notice. Yes. And then your argument is he had plenty of time to say something because 90 days had gone by before the judge decided. What explains your late transmission of the affidavit? Why did somebody wait until too late? There is no doubt that amounts to another ineffective assistance of the counsel to file this motion to reopen. But in this case, there is no prejudice to anyone because the court in Lazada and in Linn states why those requirements to notify the counsel are important. The whole purpose, which stays behind the notification to their counsel, is for the process not to be abused and because it's pretty serious to file a claim against an attorney. Well, how do we know this wasn't tactical? In other words, we don't give them an opportunity to respond by filing it on the last date. I mean, that sounds like that could be a sharp practice. I'm not accusing anybody of anything, but if we accept your answer here, then that invites other counsel to wait until the date of the hearing, FedEx the charges to the lawyer who finds out that probably by the time the lawyer reads it, the hearing is gone, and then you get to say you beat Lazada by filing it on the same day. That doesn't sound like it complies either with the letter or the spirit of Lazada if we allow that to happen. You are right. And so that's why I'm asking what's the answer? What's the explanation? And if we don't? No one knows because it's not on the record and it's the other attorney who filed this one. But the problem is that nothing happened because of this. No one has been prejudiced. And actually, this Court has said that substantial compliance with Lazada is enough. And in this Court, in this case, even we have the substantial compliance with Lazada, in addition, no one has been prejudiced because of the judge, immigration judge, just happened to respond and to write his decision 90 days later. So you're requiring then the counsel to come in and somehow add evidentiary information. By what? By scheduling another hearing? How do you do that? I'm the lawyer. All of a sudden I get this affidavit accusing me of ineffective assistance of counsel. I say, oh, that's great because the hearing was yesterday. So now what do I do? The hearing was, there was no hearing. Motion to reopen, there is no hearing before the immigration judge. What do I do when I get that? Just respond. Respond to the attorney who is filing this motion. The attorney who is accusing you. And in addition, respond to the judge where the case is. How do I respond to that judge? By writing your response. You write the response the same way. And then you're going to want to attack that because you don't agree with what the lawyer says. You see, you turn the whole process into a shambles if you run it this way. That's why notice is prompt notice. Notice doesn't work unless there's a regular opportunity to respond. That's what the whole point of this notification is, to give somebody a regular opportunity to respond. And you also an opportunity to respond to the response. And otherwise you're telling us, well, just throw it up in the air. Yeah, but the other attorney didn't respond at all. Let's say you wait one month to respond, you know, which probably is a reasonable time. Let's say then you file your motion to reopen. And then he responds after 45 days. What are you going to do with his response? You're going to submit to the court. Yeah, you see, you're asking us to write an opinion that turns this into a mishmash. And that's a bad idea. Unless there's some honest excuse for not being able to file that, to send that affidavit in time. But in addition, there are many exceptions to the requirements written by this court. One of which is that it's not necessary if the ineffective assistance is plain on the record. In this case, in my brief, I have proof it's more than plain on the record what they did. Those guys, they didn't read their application for political asylum. They promised to resubmit one. There are so many violations. They never met their clients. Can I just focus this a little bit? Okay. It seems to me you may have a good claim that Mr. Asherton was ineffective. There certainly seems to be the non-attorney who deceived these people into thinking that their asylum claim was granted. But can you explain to me how the 2002 reopening date is timely, when it seems to me that in 99 they knew Mr. Asherton hadn't appeared not to have done what he should have done, and they knew about the fraud by the non-attorney representative. They knew about all that stuff in 99. So how is the 2002 okay? At the end of 99, they start looking for this guy who pretended to be an attorney and who brought them the decision that they had to. I thought in 99 they already knew that the information that they didn't have asylum. They already knew that they didn't have asylum and that he had lied to them. No, this happened on December 9, 2000, when they contacted the attorney. Okay. So they only knew. So it was in 2000. At the end. Okay, so at the end of 2000, they know that they've been lied to and they know that or they have the information that Mr. Asherton didn't do what he should. So how is the 2002 motion to reopen timely? The first attorney, Peter Ashman, told them that nothing can be done and they better wait for a new legislation. Okay. And the first time they learned about this, it was in March 2001, when they contacted Don Cheris, who told them to check with the Freedom of Information Act to find out what exactly is going on because my parents was coming with a notice that their political asylum case has been approved, the progeny notice, and they were living like for three years. Okay. They know before 2002. They know before 2001 that the notice that they had asylum was false. That's true. Okay. So didn't they have to file a motion to reopen then? They went to one attorney. He didn't tell them. They thought they would know what to do. Okay, so Asherton was ineffective. They were deceived by the non-attorney. Now you have a second ineffective counsel. That's correct. Okay, who's the next ineffective counsel? After that, they went to Don Cheris, the one who actually filed the motion to reopen. Okay, who besides Asherton and was his name Smirnoff? Peter Ashman and Smirnoff. Okay, who besides those two people were ineffective? That's all of them. Three people were ineffective. Okay, thank you. And it's Smirnoff who says there's nothing to be done, you have to wait for the legislation? No, that's Peter Ashman. Smirnoff is the person who was not an attorney. I see. But it's Asherton who says nothing to be done, wait. He didn't wait for the new legislation. So at what date do you think that the polling, that the clock starts to run against you? You've got 90 days from some date. What date is that? The case says if the petitioners are discovering the fraud with a due diligence, and they're doing, every day they're working on their case and they're going to different attorneys and they're exercising due diligence to discover the fraud. And at this point, somebody should give them this advice to go and file a motion to reopen. The first person who mentioned motion to reopen was Don Cheris in March 2001. And then it takes, like, six months to file Freedom of Information Act to get, because even if there is a suggestion to file an effective assistance of attorney, you need to follow those petitioners to see proof that it was fake asylum approval. They show up with the approval of their asylum claim. So I hear you saying the 90-day clock never started to run? No, it started when the attorney who is supposed to file this motion to reopen is ready to do it. When he has enough information? Yes, the Freedom of Information Act, and then to file. So it starts to run as long as they're exercising due diligence. That's what Lynn says. It doesn't say, like, the respondent is coming from their brief. You have 90 days from the moment you discover the fraud. The court case says install until you meet the new attorney who is going to file the case, the motion to reopen. And what – this one's tricky because if the 90 days starts to run as soon as you have notice or as soon as you have information that there's been a fraud, but you also, as soon as you have information that there's been a fraud, you also have to comply with matter of Lozada. That's a problem. So give me the exact dates. I know the date on which the notice was sent to Asherson. That is to say, we're at the end of March. That is to say, March 23rd is the date of the affidavit. March 25th is the date of service. Trace me back from then, because this is Mr. Chavis's work. Yes. Trace me – start earlier and then work forward to this date. When did Mr. Chavis – when was he approached by the petitioners? March 2001. March? Just a year earlier. And when did he file a Freedom of Information Act? I assume after he reviewed the case and probably he – right after this, after the first meeting. So soon after. And when did he receive information back from the FOIA? I don't think that's on the record. But usually it takes six months. So you're just – It usually takes six months or even sometimes more. And what did he learn from the Freedom of Information Act request? He learned that they don't have granted political asylum, because they show up with the approval letters for political asylum written by this guy Smirnov, who just faked them and gave them a work permit, work authorization. And even the first attorney told them they are fraudulent, you don't get any proof. You have to get the record to see that there is nothing like this on the record. The Freedom of Information Act revealed what? Revealed that they don't have a political – approved political asylum. I have to file a Freedom of Information Act to find that out. How otherwise are you going to find out? Didn't Veronica Burris find out in 1999 through a Freedom of Information Act request that they didn't have asylum? Wasn't that in 1999? I don't have this on the record. I think that Don Chairs filed the Freedom of Information Act in 2001. What about Veronica Burris? They went to her, too, didn't they? I don't have this one on the record. Veronica Burris, an attorney? I do believe. Administrative record AR419. Let's see what that says. Yes. All right. In December 1998, they go to Veronica, okay? She attempts to contact Smirnoff. They file an Information Act request. It says five or six months after December 1998. Correct. All right. So in 1999, they know that they don't have amnesty. Yes. When they went to Peter Ashman, they didn't know about the fraud. That's why he told them that nothing can be done. Okay. That's what he's saying. So let's say it's June 1999. They know this information. And then they go to Ashman in August 1999. In December 2000. Well, this affidavit, 420, says, Respondents contacted Peter Ashman, another attorney in Las Vegas, in August 1999. But the receipt from this consultation is dated December 19, 2000. This is on page 170. Page 170. Okay. Well. Look at page 170. So Don Sherris is filing this affidavit, and he says they consulted with Ashman. They find out about this thing in 1999. And either they contacted Ashman in 1999, or they didn't do anything in 1999. Obviously, this attorney who found the information told them that nothing can be done. If you look at page 170, they saw Ashman in December 19, 2000. That's the receipt of the consultation. Well, but this is just a receipt. It doesn't say for what. And we have this affidavit that says we talked to him in August 1999. That's true, but take into account that the only thing they've done is meeting him once and the $75,000. So now Ashman, you say, is ineffective because he didn't do anything in 1999. Okay. Advise them the way to a new law to come, new legislation. Okay. So it's Ashman. We have Asherton is ineffective. Smirnoff is ineffective. Now, in order, we're trying to get to 2002. So now Ashman is ineffective. So what do they do with regard to Ashman? Do they send a, do they have a LASADA notice as to Ashman? No, they did not. Okay. This was just a consultation, and after telling them just to wait for the new legislation, they wait one more year, and then they went to, actually they went in March 2001, probably. But see, what you're telling me is they wait one more year. I'm trying to, if you're going to make a good claim that you had a timely March 2000 motion to reopen, 2002, that it's timely, then you've got to link, you've got to cover the whole period. We can't just have equitable tolling for a part of it. We have to cover the whole period. So I'm trying to find out how you're covering the whole period, as Judge Fletcher was trying to find out. So we've got a big gap here, and as I started to say, I think it starts from 99. The only gap I see is the moment they approach Don Cheris, who filed the motion to reopen in March 2001, that he filed the motion a year later. Okay, so there's, they went to Cheris in 2001, and a year later he files a motion to reopen. Okay. This person who told them that there is such a remedy available, they never knew about this motion to reopen and ineffective assistance. Okay, but you've got some gaps here. If Ashman was also ineffective, doesn't there have to be a LOSADA notice as to Ashman? Not just Asherson. Okay, just for consultation to tell that you have to wait for the new legislation. Either he was ineffective or not. I mean, if you want tolling, he's got to be ineffective. Am I wrong about that? He was ineffective as long as he fits into the tolling of the 90-day period, because he didn't provide. He didn't help for the due diligence to be discovered, for the fraud to be discovered, because the fraud is discovered not only when somebody tells you there is a fraud, but you have to do this and this. That's your remedy. Okay. I'm giving up. Okay. Why don't we hear from the government, and then we'll give you a chance to respond. We're trying our best to figure out what's going on here. All right. Let's hear from the government. Thank you, Your Honors. And may it please the Court, I am Blair O'Connor on behalf of the Attorney General. Your Honors, in short, this is a case about an untimely motion to reopen, a motion that was untimely by over five years. Petitioners attempt to excuse their untimeliness by blaming a host of immigration consultants and attorneys that spanned the representation from 1997 all the way up to March 2002, when the motion is finally filed. Now, because their motion failed to satisfy any of the regulatory exceptions for the 90-day time limit for filing motions to reopen, and because even under the most generous application of the equitable tolling doctrine, petitioners have simply failed to demonstrate that they exercise due diligence throughout the time they seek to equitably toll, the immigration judge in no way abused his considerable discretion in denying their motion is untimely, and this petition for review should be denied. Now, I'd like to briefly address the Court's concerns with the Lozada requirements. The government's position is that they were not complied with, and the immigration judge properly found that, specifically the second requirement. The whole point of the second requirement is that the attorney who is alleged to have been ineffective is given notice of that claim and is given an opportunity to respond prior to the motion to reopen, alleging IEC is filed. Now, petitioners conceded in this case, the earliest they provided the Ashton-Wilson law firm of notice of their filing a bar complaint against them was two days before they filed the motion to reopen. That is simply not enough time for them to have an opportunity to respond. They rely on the fact, well, the immigration judge didn't decide the motion until three months later. Well, how is the Ashton-Wilson law firm supposed to know how long the immigration judge is going to take to decide the motion? For all they know, he could have decided it next week, and they have no idea of knowing if they have an opportunity to respond. Furthermore, we would point out, it's very important in this Court, look at the record. The petitioners need to perfect their Lozada motion before the immigration court, the tribunal to which it was submitted. In their motion to reopen and in their response to the government's opposition, at no point did they provide any evidence whatsoever that they complied with that second prong. The only time they provide no evidence, which is the FedEx receipt, is on their appeal to the board. Therefore, the judge was entirely proper in deciding that he had no evidence that the second prong was complied with. An appeal is not an opportunity to get a second bite of the apple to perfect your motion. You must perfect it before the tribunal to which it was submitted. Because they didn't, this immigration judge was entirely within his discretion in denying that motion, the Lozada motion, as failing to comply with the board's requirements. Now, in this case, the immigration judge granted petitioners voluntary departure on March 5, 1997. It is significant to note that in the record, petitioners both were comfortable speaking English, they did not require the services of an interpreter, and before the immigration judge, he made very clear on the record by asking each of them individually if they were in complete agreement with their attorney's decision to withdraw that asylum application. They both said yes. Both petitioners testified yes, Your Honor. Immigration judge, we are in complete agreement with that decision. So they accept voluntary departure on March 5, 1997. Although this IJ typically only gives six months voluntary departure, because they requested and the government came to an agreement, he gave them eight months voluntary departure until November 5, 1997. Because they did not appeal, they waived their appeal of the immigration judge's decision, that became a final order of deportation on March 5, 1997. Therefore, under the regulations 3.28 CFR 3.23B, they had 90 days, or until June 3, 1997, in which to file their motion to reopen. It was not filed until March 25, 2002, over five years after the order of deportation, was entered. Because they failed to satisfy any of the regulatory exceptions to that 90-day time limit, it was properly denied as untimely. What are the regulatory exceptions that they might have been able to satisfy? There's four, Your Honor. There's one if it's a motion to reopen to rescind an inobstantial removal order, which is not the case in this case, but that's 180 days if you can provide exceptional circumstances. The second exception is a motion to reapply for asylum based on changed country conditions in the country of persecution. That does not apply here, because when they finally get to the board, all of the new evidence with respect to asylum was previously available. It was an instance that allegedly occurred to the mail petitioner back in the Ukraine, so we're not dealing with changed country conditions, so that exception doesn't apply. And then the last two have to do with motions that are jointly filed where the INS joins in the motion, and that obviously does not apply here, because the INS opposed the motion before the Immigration Court. Now with respect to the equitable tolling, again, this Court has recognized that the 90-day time limit may be equitably tolled, but in order to get that right, this Court and other circuits have held that the petitioners must exercise due diligence throughout the period that they seek to toll. This is a requirement that they simply cannot satisfy. They claim that approximately five months after the immigration judge entered the order in March of 97, they contacted a couple of Russian-speaking, one was an attorney, and two were consultants, all three of whom advised them that was a big mistake. You never should have withdrawn your asylum application. So this would have been around August of 97 time period. They're still within the voluntary departure, it has not expired since November, but yet they do not file a motion to reopen within 90 days of discovering that the Asherton Law Firm allegedly had provided them with ineffective assistance. Instead, they pay $15,000 to one of the immigration consultants, this Mr. Smirnoff, who tells them that he can get their asylum appeal reinstated. Again, this is around August of 97. After paying him $15,000, they wait an entire year. There's no evidence in the records that they call Mr. Smirnoff again to check on what's going on. They allow the November 5, 1997 expiration date of their voluntary departure period to pass without trying to obtain any extensions of that period from the service, which they could have done. The regulations at the time allowed voluntary departure to be extended indefinitely by the agency if requests were made. They never request to have the voluntary departure period extended. They wait an entire year. Now, is that supposed to be to them, or is that supposed to be to somebody that they think they're relying on to do the work for them? I mean, is that their responsibility, or somebody they think is working for them's responsibility? It's both, Your Honor. I mean, again, the regulations are out there. The law is imputed to the alien. But if we're talking about due diligence, let's assume that I've gone to somebody who's actually an attorney, as I gather Mr. Smirnoff is not. I pay him $15,000. He says, listen, I'll take care of things for you, and he doesn't. Well, he's obviously fouling up. Does that mean I'm not doing due diligence? Your Honor, again, if the attorney misinforms them, then there might be to lay some blame on him. However, we would note that at the time the immigration judge gave them voluntary departure, he notified them. Again, this is in the record in the immigration court, that, look, if you guys fail to depart by November 5, 1997, or any extensions of that date granted to you by the agency so they were informed in the immigration court, that they could have requested an extension of the voluntary departure period. And he advised them, if you don't leave by that date or the date that's extended, you become ineligible for certain forms of discretionary relief, including adjustment of status, which is what they tried to receive when they filed the motion to reopen. You become ineligible for those forms of relief for, at that time, it was five years from the date of the decision. Now it's 10 years under the changes to the law. So they were informed of that, Your Honor, and they knew they could have requested an extension. Well, I knew they were informed of that, but that wasn't my question. I understand, Your Honor. And again, this record is silent as to what Mr. Smirnoff or any other representatives following that time informed them with respect to the voluntary departure. We don't know what they were informed, so. Now, so petitioners allegedly learned during the summer of 99 that this Mr. Smirnoff had defrauded them because their asylum case had not been approved. So the government, as far as the government is concerned, that becomes the important date, August of 1999. They become aware of the attorney, their last attorney's misconduct. So under the case law that governs equitable tolling, they had 90 days from that date in which to file a motion to reopen, to file the bar complaint, do the affidavit, notify prior counsel of the complaint, and file the motion to reopen based on ineffective assistance to counsel. Their motion does not come until two and a half years later in March of 2002. Therefore, it simply is untimely, doesn't meet any exceptions, and it should not be equitably tolled beyond August of 1999. Well, you know, what he's going to say is, well, when we found out about this terrible thing in August 99, we went to Mr. Ashman, and that's how we were diligent. We went to Mr. Ashman, and Mr. Ashman was ineffective. Well, again, Your Honor, again, we point out that there's no Lozada complaint against Mr. Ashman. And the important thing, again, is that Mr. Ashman, the important thing is he did tell them, look, the last guy was ineffective. He defrauded you. So they're unaware of that. And, I mean, Mr. Ashman basically tells them, well, I'm not sure there's much that I can do. And if they have a problem with Mr. Ashman, when they finally file their motion to reopen, then we need compliance with Lozada for him and for however many other attorneys they consult with during that time period. Okay. Okay. Are there any further questions? Again, Your Honor, we would say that this Court must give substantial deference to immigration judges in ruling on motions to reopen. This record fails to show that this judge abused its conservative public discretion in denying the motion isn't timely. Thank you. Thank you. Now, Mr. Popov, we took you 10 minutes over. You're a lot of time. Why don't you take one minute for rebuttal, if you would like it? Obviously, the whole issue here is about the due diligence about my clients. And when you're here and you read all those regulations, it may be easy. But when you're out there, you go to one attorney, you go to another attorney, you've been already crooked. You've paid $15,000 to this one, to the first one, to the Ashman, who never had their political asylum claim. They paid $6,000. In 2000, they had the birth of their first child. And all the time, the due diligence talks to, is on part of the clients. They are not attorneys. They go from one attorney, they go to another, and they do what they're telling them to do. The first one who mentioned effective assistance of clients was Don Charest in March 2001. So I don't even see how until then this period cannot be told. Because every day they exercise their due diligence. They went from one attorney to another. Even when Peter Ashman told them to wait for the new legislation, and this was in December 2000, just four months later, they didn't wait for the new legislation, they went to another attorney. Here, once this attorney told them what to do, it's a burden to file this motion to reopen. How do they know where it must be filed? These 90 days, you cannot impose on a person to file something which he has no idea what to do. Thank you very much. The case of Travnakova v. Gonzalez is now submitted for decision. Thank both counsel for their helpful arguments.
judges: Trott, W. Fletcher, Restani